PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 96-3483

---

D. C. Docket No. 95-40491-RH

FOTO USA, INC., d.b.a Images of America,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
FLORIDA, JOHN C. MOYLE, personally and in his
official capacity as a member of the Board of
Regents of the University System of Florida,
et al.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Florida

---

**(May 20, 1998)**

Before BLACK, Circuit Judge, and HILL and HENDERSON, Senior Circuit
Judges.

HILL, Senior Circuit Judge:

Foto USA, Inc. seeks to take photographs at the graduation ceremonies of three

state universities in order to solicit sales of the photographs to the graduates. Foto USA, Inc. brought this action for injunctive and declaratory relief seeking an order declaring that it has both a First and Fourteenth Amendment right to take these photos, and enjoining the universities from prohibiting it from doing so. The district court granted summary judgment to the universities and Foto USA, Inc. appeals.

I.

The University of Florida, the University of South Florida and Florida State University conduct ceremonies several times each year to commemorate their students' graduation. These ceremonies are by invitation only, and are generally attended by the families and friends of the graduates. The occasion is celebratory but dignified.

In order to make professional quality photographs available to their graduates, each of these universities has solicited bids from commercial photographers, including Foto, USA, Inc. (Foto), for a contract to take pictures of the universities' respective graduates as they walk across the stage to receive their diplomas. The successful bidders received exclusive contracts obligating them to photograph the graduates as they receive their diplomas and granting them the benefit of soliciting the sale of these photographs to the graduates.

Foto chose not to bid on these contracts although it is in the business of taking

2

the same type of graduation photographs and soliciting their sale to the graduates.

Foto obtains invitations to graduation ceremonies and, once there, takes its photographs in any way it can. Foto wishes to take such photographs at the graduation ceremonies of these universities. It has presented itself and its equipment at the ceremonies of these schools and attempted to photograph the graduates in order to solicit sales of the photographs.[1]

The universities concede that Foto may attend and take a limited number of photographs from the designated seating area just as parents are permitted to do. At some points in its brief, Foto makes the specious argument that this is all it wishes to do, i.e., "what every other ticket holder can do: take pictures." If this were so, we would dismiss this case for lack of a case or controversy. Foto's real claim, however, is that it has the same right as the successful commercial photographer bidder to attend the graduation ceremonies and take pictures *for a commercial purpose.*[2] The parties agree that the universities prohibit Foto from taking a photograph of each graduate in

---

[1] Foto sought to photograph each graduating student at the ceremonies, not merely to photograph any student to or for whom it had made an advance sale.

[2] If Foto were correct that it shares the successful bidder's right to take pictures for a commercial purpose, the universities would be required to stage their ceremonies before all commercial photographers who wish to feast upon this picture-selling opportunity, and the exclusive contract granted the successful bidder would be a nullity.

3

order to solicit the sale of that photograph to the graduate.

## II.

Foto claims that it has a right under the First Amendment to commercial access to the graduation ceremonies. Foto asserts that the commercial act of soliciting the sale of photographs it intends to create there is the expressive activity which is protected by the First Amendment. It locates authority for this position in our holding in *Speer v. Miller*, 15 F.3d 1007 (11th Cir. 1994).

In *Speer*, a lawyer sued the State of Georgia, seeking injunctive relief against the enforcement of its statute which expressly permitted the public to inspect and copy the records of law enforcement agencies, but made it unlawful to inspect or copy the records "for any commercial solicitation."[3] *Speer v. Miller,* Civil Action No. 92-1094, slip op. p. 8 (N.D. Ga. September 25, 1992). On appeal, we held that a First Amendment challenge is appropriate where a state grants access to its public records,

---

[3]The Georgia statute provides:

> (a) It shall be unlawful for any person to inspect or copy any records of a law enforcement agency to which the public has a right of access under [the statute] for the purpose of obtaining the names and addresses of the victims of crimes or persons charged with crimes or persons involved in motor vehicle accidents or other information contained in such records for any commercial solicitation of such individuals or relatives of such individuals.

but prohibits the use of public records by one who wishes to engage in non-misleading truthful commercial speech. 15 F.3d at 1010. On remand, the district court held the statute unconstitutional under a strict scrutiny analysis. 864 F. Supp. 1294, 1302 (N.D. Ga. 1994).

Foto maintains that *Speer* recognized a broad First Amendment right of commercial access to public information. Although Foto concedes that this case differs from *Speer* in that it will have to *create* the photographs which are the object of its commercial solicitation, it argues, nonetheless, that any difference between seeking "access to the photographic image of graduates rather than access to documents or other records" is "immaterial." Foto claims that, under *Speer,* it may not be prohibited from taking the picture of every graduating senior at the state university graduation ceremonies because "Foto intends to solicit graduates to sell its photographs, and it is this solicitation that is the critical and protected activity."

III.

There is no First Amendment right of access to public information. *See Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) ("There is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information."); *Calder v. I.R.S.*, 890 F.2d 781, 783-84 (5th Cir. 1989) (holding that a statute restricting access to IRS information does not violate the First Amendment and

5

commenting: "Quite simply, the right to speak and publish does not carry with it an unrestricted license to gather information."); *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir. 1986) (holding that a government agency could deny a newspaper access to government records despite the apparent effect the denial might have on the newspaper's exercise of its First Amendment rights). In *Speer*, the district court itself noted on remand, "The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." 864 F. Supp. at 1297.

Commercial photographers are no exception to this general rule. *D'Amario v. Providence Civic Center Authority*, 639 F. Supp. 1538 (D.R.I. 1986), *aff'd*, 815 F.2d 692 (1st Cir. 1987). A commercial photographer has no right of special access, nor any constitutional right to memorialize a public event by photographic means. *Id.* (denying photographer right to enter public civic center and take pictures of musicians despite "no camera" rule because "any right of access which he might have is, at best, a right to attend, listen, and report, as opposed to a right to film or record events").

Nor does Foto claim a First Amendment right of access to information. Foto's claim is that, where access is permitted, *Speer* prohibits the state from restricting the commercial use of that information. The general public (parents and anyone else with an invitation), the official photographers, and Foto are all permitted access to university graduation ceremonies. All are permitted to take photographs of the

graduates. Foto contends that, under *Speer*, the universities may not prohibit its commercial use of these photos.[4]

Even if *Speer* were analogous to this case,[5] it would not control the result. In *Speer*, the Georgia statute granted public access to, but punished <u>all</u> commercial use of its traffic records. The universities in this case have not prohibited commercial access to their graduating ceremonies. In fact, they have encouraged commercial access by contracting with official photographers, after open bidding, to attend and take pictures of their graduates. The First Amendment is not implicated by this practice.

They do seek, however, to *limit* commercial access to just one photographer. To this end they granted exclusive rights to photograph the graduation ceremonies for

---

[4]Foto agrees that the state may restrict even First Amendment protected commercial solicitation if it can show that the restriction directly advances a substantial government interest under the test enunciated in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980). Its position is that the universities' claim that they prohibit Foto from its photography in order to avoid disruption of the ceremonies is both untrue and too trivial to satisfy *Central Hudson's* requirement that any regulation be in furtherance of a substantial governmental interest. We do not consider the reasonableness of any restrictions the universities may place on Foto's photography because we hold that no First Amendment right is implicated in this case.

[5]Whether the creation of a photograph is similar to copying public records is not readily apparent.

commercial purposes to official photographers.[6]  Although Foto asserts that it has

"withdrawn all of its challenges to the 'exclusive contracts' between the University

System and its 'official photographers,'" Foto still insists that the State may not

prohibit Foto from commercial access to its graduation ceremonies if it grants that

same right to an official photographer.[7]

The real issue in this case, therefore, is whether the Fourteenth Amendment's

guarantee of equal protection of the law requires the universities to permit *every*

commercial photographer who wishes to take photographs of the graduates for a

---

[6]If the contracts were not exclusive and any photographer could take pictures and then solicit the graduates to buy them, the incentive for the official photographer to attend and take pictures would be diminished by the amount of business he loses to the "outlaw" photographers.  If the official photographer cannot make a profit, he will not bid again and the university will be left to rely on the whim of the "unofficial" photographers to attend and take pictures.

[7]Foto's equal protection argument on appeal is that "[t]he court below erroneously determined that allowing one professional photographer access to graduation ceremonies and denying it to a professional photographer does not violate equal protection."  In its motion for summary judgment to the district court, Foto argued: "Plaintiff is not claiming that his equal protection rights are being violated *vis-à-vis* the official photographers by being denied access to the stage or orchestra pit area, but *vis- à-vis* the other members of the audience, by being denied the ability to sit down and shoot pictures without being harassed. . . ."  The universities argue that Foto has waived any claim of discrimination against it in favor of the official photographers, by failing to raise it in the district court.  We note only that Foto has waived on appeal any argument that the universities' treatment of parents has denied Foto equal protection of the law.

8

commercial purpose to do so.[8] Foto claims that it does.

Foto relies on *Florida State University Chapter, Local 1880 v. Florida Bd. of Regents,* 355 F. Supp. 594 (N.D. Fla. 1973) for its argument that the State has discriminated against it by disallowing it commercial access to graduation. This reliance is misplaced. That case involved whether the Board of Regents could deny permission to the faculty union of Florida State University to use university facilities which the American Association of University Professors (AAUP) had been allowed to use. Neither the faculty union nor the AAUP, however, sought access to university facilities for a commercial purpose. Neither had any commercial contract with Florida State University. The issue was one of mere access to university facilities.

In this case, however, Foto does not seek mere access. It seeks *commercial* access.[9] The universities seek to deny Foto commercial access to its graduation

---

[8] In an early demand letter to the universities, Foto itself recognized that "a horde of professional [photographers][ sic] descending on your ceremony, crowding out the parents" would be possible under its position. Nevertheless, Foto assured the universities that "[s]uch over-coverage would result in profit for no one." and "[i]f a crowd of photographers turns up, then you could devise specific rules to deal with everyone's needs."

[9] We would deny any equal protection claim regarding the universities' treatment of the parents even if were not waived. Foto is not similarly situated to the parents who wish merely to memorialize their children's graduation from college. Foto's commercial purpose for taking pictures of all the graduates distinguishes it from the parents. Since they are not similarly situated, the universities do not discriminate against Foto by treating it differently from the parents.

ceremonies because they each have an exclusive contract with an official photographer.[10] If it is within the universities' power to enter such contracts, then Foto is not denied equal protection of the law merely because it chose not to bid on the contracts, and so does not reap the benefit of that bargain.

It is axiomatic that a state may enter into contracts with parties for the purchase of services. In fact, the state, as a purchaser of services, enjoys a broad freedom to deal with whom it chooses on such terms as it chooses. *Coyne-Delany Co. v. Capital Dev. Bd.,* 616 F.2d 341, 342 (7th Cir. 1980). At least in the absence of an invidious and discriminatory design to favor one individual over another, a state agency's purchasing decision is not subject to review in federal court. *Id.* Foto chose not to bid on these contracts. It cannot be heard now to claim that it was discriminated against in their award. *Id.*

Furthermore, a state may enter into an exclusive licensing contract with a party without offending federal or state antitrust laws. *Murdock v. City of Jacksonville*, 361 F. Supp. 1083, 1088-89 (M.D. Fla. 1973) (city may enter into exclusive lease of its

---

[10]If the contracts were not exclusive and any photographer could take pictures and then solicit the graduates to buy them, the incentive for the official photographer to attend and take pictures would be diminished by the amount of business he loses to the "outlaw" photographers. If the official photographer cannot make a profit, he will not bid again and the university will be left to rely on the whim of the "unofficial" photographers to attend and take pictures.

coliseum with one wrestling promoter despite unsuccessful bidder's claim that exclusivity violated First Amendment right to engage in his profession). As the district court noted in that case, an exclusive contract after an open bidding process indicates that one competitor succeeded and necessarily the other failed. *Id.* at 1088. This does not mean, however, that the result is unconstitutional or even unfair. *Id.*

Although Foto has apparently dropped its antitrust claims,[11] this analysis applies to its equal protection argument as well. An exclusive contract between a state and a private contractor does not, without more, violate the unsuccessful bidder's right to equal protection of the law. *Hubbard Broadcasting, Inc. v. Metropolitan Sports Facilities Com'n*, 797 F.2d 552 (8th Cir. 1986). In *Hubbard*, a municipal sports complex awarded exclusive advertising rights on its scoreboard to companies on a first-come, first-served basis. An advertiser who was denied advertising space on the scoreboard sued claiming denial of equal protection because the scoreboard was a public forum. *Id.* at 554. Although the exclusive contract denied the advertiser space on the municipal scoreboard, the Eighth Circuit found no constitutional violation, because the scoreboard was not a public forum. *Id.* To hold otherwise, the court

---

[11]Foto states that it sought to dismiss these claims as well as the photographer defendants, but that the district court ruled on the cross-motions for summary judgment before entering the dismissal. Additionally, Foto's motion for summary judgment conceded it was "not attacking the validity of these contracts nor the ability of the university to have an official graduation photographer."

11

noted, would mean that anyone who desired to advertise his product on the scoreboard would have a First Amendment right to do so. "No doubt the principal function of the Metrodome would be disrupted by the volume of the expressive activity alone." 797 F.2d at 555.[12]

Foto concedes that the graduation ceremonies at issue in this case are not public fora. Since they are not, the state in its proprietary capacity may contract to allow exclusive commercial access to one graduation photographer without offending the equal protection clause. *Id.*

Every contract is a burden on commercial speech in the sense that Foto argues – that the non-contracting party is excluded from the commercial benefit of the contract. This, in and of itself, however, creates no equal protection problem because there is no constitutional provision which requires that non-contracting parties enjoy the benefits of others' bargains.

The constitution requires only that the state not discriminate on the basis of some suspect class in the award of its contracts, *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel*, 20 F.3d 1311, 1320 (4th Cir. 1994), or discriminate in applying an otherwise neutral process. *See Cook v. City of Price,* 566

---

[12]Similarly, the principal function of the graduation ceremonies would be disrupted by the activities of any number of commercial photographers if there were not a single official photographer.

F.2d 699 (10th Cir. 1977) (selective enforcement of zoning ordinance); *Burt v. New York*, 156 F.2d 791 (2d Cir. 1946) (discriminatory denial of building permits). Where state economic activity is challenged, the general rule is that it is presumed valid and is sustained if it is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). If there is no claim of discrimination on the basis of some suspect class, the state need show only a rational relationship between a legitimate state interest and the economic activity. *Id.* In the local economic sphere, it is only invidious discrimination, the wholly arbitrary act, that cannot stand consistently with the Fourteenth Amendment. *New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976).

In this case, the universities want to provide a dignified graduation ceremony at which professional photographs will be taken for later sale to the graduates. They have determined that this is best accomplished by awarding an exclusive contract to a professional photographer. They initiated open bidding processes and solicited bids, including one from Foto.

Foto does not even an allege that the award of these contracts was unfair or that it was discriminated against on the basis of some suspect class. Foto complains only that, having chosen not to bid, it does not now have equal access to the subject of the contract. This is sour grapes, not a constitutional claim.

All contracts are by their nature exclusionary. Foto's complaint that the official photographers have exclusive access to the graduation ceremonies does not transform the universities' performance under their contracts with the official photographers into a conspiracy to deny Foto equal protection of the law. *See Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 995 (4th Cir. 1990) (exclusion of other photographers by school officials who entered exclusive contracts with official yearbook photographers are readily explainable as legitimate acts consistent with their contractual responsibilities) (citing *Ryko Mfg. v. Eden Services.,* 823 F.2d 1215, 1227–29 (8th Cir. 1987) (distributor's contractual duties to solicit and accept purchase orders do not transform customer agreements into conspiracies to fix prices)).

The only way Foto's complaint could state an equal protection violation is if all exclusive contracts between state agencies and private contractors are per se discriminatory. This position "flies in the face of commercial reality: school districts, and businesses generally, typically enter into exclusive contracts for the provision of all kinds of services, including legal, accounting, security, plumbing, and maintenance services." *See Burns v. Cover Studios, Inc.,* 818 F. Supp. 888,892 (W.D. Pa. 1993).

IV.

There is no First Amendment issue in this case because commercial access to the graduation ceremonies has not been denied. The state universities awarded

14

exclusive photography contracts after an open bidding process about which Foto does not complain. Under these circumstances, there is no colorable equal protection claim raised in this case. Accordingly, the judgment of the district court is AFFIRMED.