Cedric SPOTTSVILLE, Plaintiff,

v.

Roy BARNES, in his official capacity as Governor and Thurbert Baker, in his official capacity as Attorney General, Defendants.

No. CIV.A. 1:99CV1934TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 4, 2001.

Ralph S. Goldberg, Office of Ralph S. Goldberg, Decatur, GA, for Cedric Spottsville, plaintiff.

Kathryn Lloyd Allen, Dennis Robert Dunn, Thurbert E. Baker, Office of State Attorney General, Atlanta, GA, for Roy Barnes, in his official capacity as Governor, Thurbert Baker, in his official capacity as Attorney General, defendants.

## ORDER

THRASH, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 to challenge a recent amendment to the Georgia Open Records Act. Plaintiff alleges violations of his First Amendment freedom of speech and his Fourteenth Amendment equal protection rights. This Court denied the claim for relief and entered judgment for the Defendants. Plaintiff appealed to the Eleventh Circuit. The case is now before the Court on remand from the United States Court of Appeals for the Eleventh Circuit in light of the decision of the Supreme Court of the United States in *Los Angeles Police Department v. United Reporting Publishing Corporation*, 528 U.S. 32, 40–41, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999).

Plaintiff filed this action along with a Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 3] on July 27, 1999. The Court held a hearing on the motion on August 3, 1999. The Court denied Plaintiff's Motion for a Temporary Restraining Order and, with the parties' agreement, scheduled a hearing to consider together the Motion for a Preliminary Injunction and Plaintiff's request for a permanent injunction. That hearing was held on September 3, 1999, and the Court took the matter under advisement. On October 14, 1999, the Court entered an Order denying Plaintiff's Motion for a Preliminary Injunction and his request for a permanent injunction. Judgment was entered in favor of the Defendants.

Plaintiff appealed to the Eleventh Circuit. Approximately two months after this Court's October 14, 1999, Order, the Supreme Court rendered its decision in *United ed Reporting*. On appeal, the Eleventh Circuit affirmed this Court as to Plaintiff's equal protection claim. The Eleventh Circuit remanded the case on Plaintiff's free speech claim. The Eleventh Circuit directed the Court to reconsider Plaintiff's free speech claim in light of the new Supreme Court precedent. For the reasons set forth below, the Court in light of *United ed Reporting* again denies Plaintiff's Motion for a Preliminary Injunction and request for a permanent injunction.

## I. BACKGROUND

This case involves the third attempt by the General Assembly of Georgia to restrict the use of motor vehicle accident reports for commercial solicitation. Plaintiff Cedric Spottsville is a private detective licensed by the State of Georgia. On July 27, 1999, he filed suit against Defendants Roy Barnes and Thurbert Baker, the Governor and Attorney General of Georgia, respectively. Both Defendants are sued in their official capacities. Plaintiff seeks a permanent injunction barring Defendants from enforcing 1999 Ga. Laws 393, also referred to as Senate Bill 20 (hereafter "the Act"). The Act was signed by the Governor and became effective July 1, 1999. The Act repealed O.C.G.A. § 35–1–9 and amended the Georgia Open Records Act, O.C.G.A. §§ 40–5–2(b) and 50–18–72(a). Together, the amendments have the effect of exempting some motor vehicle accident reports from the full and complete disclosure requirements of the Open Records Act. This allows local governments and state agencies the option of releasing or not releasing accident reports except as to certain parties. The Act specifically requires access for certain parties listed at O.C.G.A. § 50–18–72(a)(4.1), such

as the parties to the accident, their professional representatives or insurers, and members of the news media. Plaintiff does not fit any of the delineated categories. He is a private detective unaffiliated with any party to an accident, and seeks the information for a commercial purpose. Plaintiff intends to use information contained within the accident reports for soliciting clients who might want to employ him as an investigator. As a result of the 1999 amendment to the Open Records Act, he has been denied access to motor vehicle accident reports by the City of Atlanta and other metropolitan Atlanta jurisdictions. Plaintiff alleges that the Act constitutes an unconstitutional prior restraint on commercial speech in violation of the First Amendment. Plaintiff also alleged that the Act denies him equal protection of the law in violation of the Fourteenth Amendment by allowing others access to the information while denying him access. The Eleventh Circuit affirmed this Court's decision that no equal protection violation exists. Accordingly, this Order addresses only Plaintiff's free speech claim.

## II. DISCUSSION

 Plaintiff moves this Court to enjoin permanently enforcement of the Act. The standard for issuance of a permanent injunction is essentially the same as that for the issuance of a preliminary injunction, except that a plaintiff seeking permanent relief must show actual success on the merits, rather than a mere likelihood of success on the merits. *See Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). In order to be entitled to permanent injunctive relief, Plaintiff must satisfy the following three criteria: (1) violation of the applicable constitutional standard by the Defendant; (2)

continuing irreparable injury to the Plaintiff in the absence of an injunction; and (3) lack of an adequate remedy at law. *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir.1982). On the merits, the question before the Court is this: whether the Act, by failing to guarantee access to accident reports, violates the First Amendment. Based on a review of the record, applicable case law, and the statutes in question, the Court concludes it does not.

 As noted above, this case involves Georgia's latest attempt to curtail solicitation of accident victims by restricting access to public records. A brief history of prior legislative efforts in this area is helpful to resolution of this case. In 1991, the Georgia General Assembly enacted O.C.G.A. § 35–1–9 which made it unlawful to inspect or copy arrest, accident or incident reports for the purpose of obtaining victims' or defendants' names and addresses "for any commercial solicitation" of the individuals or their relatives. *See* O.C.G.A. § 35–1–9(a) (1998). Section 35–1–9, however, allowed inspection and publication of these reports by the media. *See* O.C.G.A. § 35–1–9(b) (1998). Violation of the statute constituted a misdemeanor. *See* O.C.G.A. § 35–1–9(c) (1998). The Act was challenged by an attorney who sought to use arrest reports to solicit clients. The district court initially denied a preliminary injunction against enforcing O.C.G.A. § 35–1–9, finding the statute did not implicate the First Amendment. The Eleventh Circuit reversed the district court and remanded the case. The Eleventh Circuit held:

A first amendment challenge is appropriate where a state prohibits the use of public records by one who wishes to engage in non-misleading, truthful commercial speech. Advertisements by lawyers fall within this protected category. Statutes that restrict commercial speech

must directly advance a substantial government interest and the state bears the burden of justifying its restrictions. A mere reading of this statute indicates that it probably impinges upon Speer's commercial speech.

*Speer v. Miller,* 15 F.3d 1007, 1010 (11th Cir.1994) (citations omitted).

On remand, the district court applied strict scrutiny and permanently enjoined enforcement of O.C.G.A. § 35–1–9. *Speer v. Miller,* 864 F.Supp. 1294, 1295 (N.D.Ga. 1994). The court found that the statute violated the First Amendment as an unconstitutional restriction on commercial speech.[1] *Speer,* 864 F.Supp. at 1302. Proceeding under the analysis prescribed by *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the district court found the statute more extensive than necessary to serve the purported substantial government interests of protecting privacy and preventing fraud. The Eleventh Circuit had already rejected the protection of privacy argument. *See Speer,* 15 F.3d at 1011 n. 7 ("We note that any privacy arguments the state asserts are disingenuous in light of the fact that the statute carves out an exception for the media to place any information they obtain on the front page of any newspaper in Georgia."). The district court rejected the fraud argument also: "Because the Georgia statute restricts access not only by corrupt attorneys but also by honest attorneys, honest health care providers and other honest solicitors, there exists a need to justify the broad scope of the restriction and to demonstrate that less-restrictive means would not have sufficed." *Id.* at 1301. The court found that the State had failed to establish that the statute was narrowly tailored. *Id.*

Thereafter, the General Assembly enacted O.C.G.A. § 33–24–53(c) and (e). Section 33–24–53(c) provided:

> With respect to a motor vehicle accident, no employee of any law enforcement agency shall allow any person, including an attorney, health care provider, or their agents, to examine or obtain a copy of any accident report or related investigative report when the employee knows or should reasonably know that the request for access to the report is for commercial solicitation purposes. No person shall request any law enforcement agency to permit examination or to furnish a copy of any such report for commercial solicitation purposes. For purposes of this subsection, a request to examine or obtain a copy of a report is for "commercial solicitation purposes" if made at a time when there is no relationship between the person or his principal requesting the report and any party to the accident, and there is no apparent reason for the person to request the report other than for purposes of soliciting a business or commercial relationship. All persons, except law enforcement personnel and persons named in the report, shall be required to submit a separate written request to the law enforcement agency for each report. Such written request shall state the requestor's name, address, and the intended use of the report in sufficient detail that the law enforcement agency may ascertain that the intended use is not for commercial solicitation purposes. The law enforcement agency shall file each written request with the original report. No person shall knowingly make any false statement in any such written request.

---

1. Because the statute failed under the First Amendment, the court did not address the Fourteenth Amendment Equal Protection claim.

O.C.G.A. § 33–24–53(c). Violation of this Code Section was made a misdemeanor. O.C.G.A. § 33–24–53(e).

In 1996, a private detective agency in Georgia challenged O.C.G.A. § 33–24–53(c). The detective agency sued then-Governor Zell Miller under 42 U.S.C. § 1983 after being denied copies of motor vehicle accident reports. The detective agency alleged that the statute constituted an unconstitutional prior restraint on First Amendment commercial speech. The district court issued a preliminary injunction enjoining the enforcement of O.C.G.A. § 33–24–53(c) and (e). On appeal, the Eleventh Circuit affirmed the injunction, finding that O.C.G.A. § 33–24–53(c) and (e) probably violated the First Amendment. *Statewide Detective Agency v. Miller*, 115 F.3d 904, 906 (11th Cir.1997). The court held: "The narrow question before us is whether §§ 33–24–53(c) and (e), by criminalizing requests for public records for commercial solicitation purposes, probably violates the First Amendment. We find that it does." *Id.* The district court subsequently granted summary judgment for the plaintiff. *See Statewide Detective Agency v. Miller*, 1:96cv1033-WBH (N.D.Ga. Aug.12, 1998).

In 1999, the General Assembly made a third attempt to restrict access to accident reports for commercial solicitation which is now before the Court. The Act in question amended the Georgia Open Records Act, O.C.G.A. § 50–18–72, so that it now reads:

> Public disclosure shall not be required for records that are ... (4.1) Individual Georgia Uniform Motor Vehicle Accident Reports, except upon the submission of a written statement of need by the requesting party, such statement to be provided to the custodian of records and to set forth the need for the report pursuant to this Code section; provided, however, that any person or entity whose name or identifying information is contained in a Georgia Uniform Motor Vehicle Accident Report shall be entitled, either personally or through a lawyer or other representative, to receive a copy of such report; and provided, further, that Georgia Uniform Motor Vehicle Accident Reports shall not be available in bulk for inspection or copying by any person absent a written statement showing the need for each such report pursuant to the requirements of this Code section.

O.C.G.A. § 50–18–72(a). The Act defined "need" as follows:

> For the purposes of this subsection, the term "need" means that the natural person or legal entity who is requesting in person or by representative to inspect or copy the Georgia Uniform Motor Vehicle Accident Report: (A) Has a personal, professional, or business connection with a party to the accident; (B) Owns or leases an interest in property allegedly or actually damaged in the accident; (C) Was allegedly or actually injured by the accident; (D) Was a witness to the accident; (E) Is the actual or alleged insurer of a party to the accident or of property actually or allegedly damaged by the accident; (F) Is a prosecutor or a publicly employed law enforcement officer; (G) Is alleged to be liable to another party as a result of the accident; (H) Is an attorney stating that he or she needs the requested reports as part of a criminal case, or an investigation of a potential claim involving contentions that a roadway, railroad crossing, or intersection is unsafe; (I) Is gathering information as a representative of a news media organization; or (J) Is conducting research in the public interest for such purposes as accident prevention, prevention of injuries or damages

in accidents, determination of fault in an accident or accidents, or other similar purposes; provided, however, this subparagraph will apply only to accident reports on accidents that occurred more than 30 days prior to the request and which shall have the name, street address, telephone number and driver's license number redacted . . . .

*Id.*

The latest attempt to restrict access to motor vehicle accident reports for commercial solicitation differs from the earlier statutes in two significant ways. First, by repealing O.C.G.A. § 35–1–9, the General Assembly removed the criminal punishment for accessing and utilizing accident reports for commercial solicitation purposes. Secondly, the Act does not affirmatively prohibit access for commercial purposes. Instead, the General Assembly removed the disclosure requirement in the Open Records Act for accident reports except as to specifically denominated parties. This gives local governments and state agencies the option of denying access to accident reports to parties not meeting the appropriate standard of need as determined by the General Assembly. The Court must consider whether these distinctions make this Act constitutional.

Plaintiff is suing pursuant to 42 U.S.C. § 1983. Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities "secured by the Constitution or laws." 42 U.S.C. § 1983. To state a Section 1983 claim, "a plaintiff must allege facts showing that the defendant's act or omission, done under the color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or the laws of the United States." *Emory v. Peeler,* 756 F.2d 1547,

1554 (11th Cir.1985) (citation omitted). Thus, Section 1983 is not a source of rights; rather, it is a means of vindicating federal rights elsewhere conferred. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

When a court begins to analyze a Section 1983 claim, it must first "identify the specific constitutional right allegedly infringed." *Id.* Whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Plaintiff claims he has a right under the First Amendment to commercial access to motor vehicle accident reports. Plaintiff asserts that the commercial act of soliciting accident victims for his investigative services is the expressive activity which is protected by the First Amendment. The Court originally disagreed with Plaintiff's argument based on its interpretation of Eleventh Circuit precedent in *Speer v. Miller,* 15 F.3d 1007, 1010 (11th Cir.1994), and *Foto USA, Inc. v. Board of Regents of Univ. Sys. Of Fla.,* 141 F.3d 1032, 1035 (11th Cir.1998). In *Foto USA,* a commercial photographer sought injunctive relief against the Florida University System claiming First and Fourteenth Amendment rights to take photographs at the universities' graduation ceremonies in order to solicit sales of the photographs. The universities had granted exclusive rights to photograph each graduate to another commercial photographer in an open bidding process in which Foto USA chose not to participate. The Eleventh Circuit held that "there is no First Amendment right of access to public information." *Id.* at 1035. It appears to have rejected the claim that *Speer v. Miller* recognized a "broad First Amendment right of commercial access to public information." *Id.* The

Court's previous Order was its best effort to reconcile *Speer v. Miller* and *Foto USA*. The Court now reconsiders its decision in light of the Supreme Court's decision in *Los Angeles Police Department v. United Reporting Publishing Corporation*, 528 U.S. 32, 40–41, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999).

In *United Reporting,* a private publishing service that provided names and addresses of recently arrested individuals to attorneys, insurance companies, drug and alcohol counselors, and driving schools brought a challenge to California Government Code § 6254(f)(3). Section § 6254(f)(3) places two conditions on public access to arrestees' addresses—(1) that the person requesting an address declare that the request is being made for one of five specified purposes, and (2) that the requestor also declare that the address will not be used directly or indirectly to sell a product or service. The district court granted summary judgment in favor of the plaintiff and permanently enjoined enforcement of the statute. The Ninth Circuit Court of Appeals affirmed, holding that the statute in question was facially invalid because it unduly burdens commercial speech. The Supreme Court reversed in a 7–2 decision.

The Supreme Court agreed with the defendant that "the section in question is not an abridgement of anyone's right to engage in speech, be it commercial or otherwise, but simply a law regulating access to information in the hands of the police department." *Id.* at 40, 120 S.Ct. 483. The Court explained:

> This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses. The California statute in question merely requires that if [the plaintiff] wishes to obtain the addresses of arrestees it must qualify under the statute to do so. Respondent did not attempt to qualify and was therefore denied access to the addresses. For purposes of assessing the propriety of a facial invalidation, what we have before us is nothing more than a government denial of access to information in its possession. California could decide not to give out arrestee information at all without violating the First Amendment.

*Id.* (citations omitted).

Similarly, the Act at issue in this case is at most nothing more than a governmental denial of access to information. The Act imposes less of a burden upon commercial speech and solicitation than the California statute. It amended the Georgia Open Records Act to give state agencies and local governments the option of not giving out accident reports on a wholesale basis for use in commercial solicitation. Even applying the rationale of the two dissenting Justices in *United Reporting*, Plaintiff does not possess a viable facial or as-applied challenge. As Justice Stevens noted in his dissent joined by Justice Kennedy, " 'California could decide not to give out arrestee information at all without violating the First Amendment.' Moreover, I think it equally clear that California could release the information on a selective basis to a limited group of users who have a special, and legitimate, need for the information." *Id.* at 45, 120 S.Ct. 483 (Stevens, J., dissenting) (citation omitted). That is what the state of Georgia has done.

The Georgia Act does not prohibit all commercial access to information. In fact, the Act guarantees commercial access to private investigators with "a personal, professional, or business connection with a party to the accident." *See* O.C.G.A. § 50–18–72(4.1)(A). The State only mandates commercial access to private investigators retained by a party to the accident. It imposes no limitation upon an investiga-

tor's use of the accident report once he obtains it. The Act does not prohibit Plaintiff from accessing the information he seeks, it merely fails to guarantee his access. Moreover, the statute does not restrict the use to which the information is put once access is obtained. *See United Reporting*, 528 U.S. at 42, 120 S.Ct. 483 (Ginsburg, J., concurring) ("As the Court observes, ... the statute at issue does not restrict speakers from conveying information they already possess. Anyone who comes upon arrestee address information in the public domain is free to use that information as she sees fit."). The Court is persuaded that O.C.G.A. § 50–18–72(a)(4.1) restricts access to public records but does not implicate First Amendment rights. Plaintiff is free to solicit all the clients he wishes. He cannot, however, compel the State to subsidize his efforts. Plaintiff is not entitled to an injunction based on his First Amendment claim.

 In short, there is no First Amendment right of access to public information. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) ("There is no discernable basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information."); *Calder v. IRS*, 890 F.2d 781, 783–84 (5th Cir.1989) (holding that a statute restricting access to IRS information does not violate the First Amendment). "Quite simply, the right to speak and publish does not carry with it an unrestricted license to gather information." *Calder*, 890 F.2d at 784. As the district court in *Speer* noted on remand, "The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." *Speer v. Miller*, 864 F.Supp. 1294, 1297 (N.D.Ga.1994). A private investigator seeking information for commercial solicitation has no First Amendment constitutional right of special access to motor vehicle accident reports. Accordingly, Plaintiff's Motion for a Preliminary Injunction and his request for a permanent injunction were properly denied. For this Court to rule otherwise could very well create an incentive for less governmental disclosure. "[I]f States were required to choose between keeping proprietary information to themselves and making it available without limits, States might well choose the former option. In that event, disallowing selective disclosure would lead not to more speech overall but to more secrecy and less speech." *United Reporting*, 528 U.S. at 43, 120 S.Ct. 483 (Ginsburg, J., concurring). As the Georgia Open Records Act recognizes, the First Amendment right of the press to disseminate information of public interest outweighs concerns about widespread dissemination of personal information. On the other hand, as governmental agencies obtain more and more sensitive information about us, and that information is more readily accessible through the Internet, reasonable distinctions may be made by the State in terms of limiting wholesale access to personal information. With respect to motor vehicle accident reports, the Georgia Open Records Act mandates release of the records on a selective basis to a limited group of users who have a special and legitimate need for the information. Based upon this Court's reading of *United Reporting*, that is not unconstitutional.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction [Doc. 3] is DENIED in light of the Supreme Court of the United States' decision in *Los Angeles Police Department v. United Reporting Publishing Corporation*, 528 U.S. 32, 40–41, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999). The Clerk is directed to again

enter judgment in favor of the Defendants with all parties to bear their own costs.